IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA )<br><br>Plaintiff, )<br>v. )<br>R & L CARRIERS, INC. )<br><br>Defendant. ) | Civil Action No. 1:22-cv-601 |

# COMPLAINT

1.  The United States of America, acting on behalf of the United States Environmental Protection Agency ("EPA"), by authority of the Attorney General of the United States, files this Complaint and alleges as follows:

## NATURE OF THE ACTION

2.  This is a civil action under the Clean Water Act ("CWA") 33 U.S.C. § 1251 *et seq.*, against Defendant R & L Carriers, Inc. ("R & L") arising from a discharge of approximately 538 barrels of oil that occurred on or about March 5, 2022 and continued through approximately April 7, 2022 from R & L's Wilmington, Ohio headquarters ("Wilmington Facility") into Dutch Creek ("Dutch Creek Spill"). The United States seeks civil penalties and injunctive relief pursuant to CWA Sections 309(b) and 311(b), 33 U.S.C. §§ 1319(b) and 1321(b), for the Dutch Creek Spill discharge and for R & L's failure to comply with Spill Prevention, Control, and Countermeasure ("SPCC") regulations promulgated by EPA pursuant to Section 311(j) of the CWA, 33 U.S.C. § 1321(j) at 40 C.F.R. Part 112.

## JURISDICTION, VENUE, AND AUTHORITY

3. This Court has subject matter jurisdiction over the claim brought by the United States in this action under Sections 309(b), 311(b)(7)(E) and 311(n) of the CWA, 33 U.S.C. §§ 1319(b) and 1321(b)(7)(E) and 1321(n); and 28 U.S.C. §§ 1331, 1345, and 1355.

4. Venue is proper in the Southern District of Ohio under Sections 309(b), 311(b)(7)(E), (e), and (n) of the CWA, 33 U.S.C. §§ 1319(b) and 1321(b)(7)(E), (e), and (n); and 28 U.S.C. §§ 1391, 1395, because R & L is located in this judicial district and the violations asserted herein occurred in this judicial district.

5. Authority to bring this action on behalf of the United States is vested in the United States Department of Justice by CWA Section 506, 33 U.S.C. § 1366, and 28 U.S.C. §§ 516 and 519.

6. Notice of commencement of this action has been given to the State of Ohio, pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b).

## PARTIES

7. Plaintiff, the United States of America, is acting at the request of EPA. EPA served as the lead federal agency in the oversight of the Dutch Creek Spill cleanup efforts in Clinton County, Ohio and has authority to enforce the provisions of the CWA.

8. Defendant R & L, an Ohio corporation, is headquartered in Wilmington, Ohio, and is a motor freight carrier with operations throughout the United States.

9. At the time of the Dutch Creek Spill, R & L owned and operated, and still owns and operates, the Wilmington Facility, an oil storage and dispensing facility located in Wilmington, Ohio.

## **RELEVANT STATUTORY AND REGULATORY BACKGROUND**

10. The CWA is designed to restore and maintain the chemical, physical, and biological integrity of the nation's waters. 33 U.S.C. § 1251(a).

### A. CWA's Prohibition of Discharges

11. Section 311(b) of the CWA prohibits the discharge of oil or hazardous substances into or upon the navigable waters of the United States and adjoining shorelines or which may affect natural resources belonging to or appertaining to the United States in such quantities as may be harmful as determined by the President. 33 U.S.C. § 1321(b)(3). This authority has been delegated to EPA. Exec. Order No. 12777, 3 C.F.R., 1991 Comp., p. 351.

12. Pursuant to CWA Section 311(b)(4), 33 U.S.C. § 1321(b)(4), EPA has determined by regulation that discharges of oil in such quantities as may be harmful to the public health or welfare or environment of the United States include discharges of oil that "(a) [v]iolate applicable water quality standards; or (b) [c]ause a film or sheen upon or discoloration of the surface of the water or adjoining shorelines, or cause a sludge or emulsion to be deposited beneath the surface of the water or upon adjoining shorelines." 40 C.F.R. § 110.3.

13. Section 311(b)(7)(A) of the CAA provides that any "person" who is the owner, operator, or person in charge of any onshore facility from which oil is discharged in violation of Section 311(b) shall be subject to a civil penalty. 33 U.S.C. § 1321(b)(7)(A).

14. The following definitions in the CWA are relevant to the prohibition of discharge in Section 311(b).

    a. A "person" is an individual, corporation, partnership, association, State, municipality, commission, or political subdivision of a State, or any interstate body. 33 U.S.C. § 1362(5).

      b.      An "owner or operator" of an onshore facility means "any person owning or operating such onshore facility." 33 U.S.C. §1321(a).

      c.      An "onshore facility" is any facility of any kind located in, on, or under, any land within the United States, other than submerged land. *Id.*

      d.      "Discharge" means any spilling, leaking, pumping, pouring, emitting, emptying or dumping. *Id.*

      e.      "Oil" means "oil of any kind or in any form." *Id.*

      f.      "Navigable waters" means waters of the United States, including the territorial seas. 33 U.S.C. § 1362(7). In turn, "waters of the United States" has been defined to include, among other things, waters which are currently used, or were used in the past, or may be susceptible to use in interstate or foreign commerce, including waters which are subject to the ebb and flow of the tide; tributaries to such waters; and wetlands adjacent to the foregoing waters. 40 C.F.R. § 110.1 (1993).

15.     Section 301 of the CWA prohibits the discharge of any pollutant by any person, except, inter alia, in compliance with a National Pollutant Discharge Elimination System permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342, by EPA or an authorized state. 33 U.S.C. § 1311(a).

16.     "Discharge of a pollutant" means any addition of any pollutant to navigable waters from any point source. 33 U.S.C. § 1362(12).

17.     "Pollutant" includes "solid waste . . . chemical wastes, biological materials ... and industrial . . . waste discharged into water." 33 U.S.C. § 1362(6).

18.     A "point source" is any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container,

rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged. 33 U.S.C. § 1362(14).

### B. Spill Prevention, Control, and Countermeasure Regulations

19. Section 311(j) of the CWA, 33 U.S.C. § 1321(j), authorizes the President to promulgate regulations establishing methods, procedures, and equipment to prevent discharges of oil from onshore facilities and contain such discharges when they do occur. This authority was delegated to EPA. Exec. Order No. 11735, 38 FR 21243, 3 C.F.R., 1971–1975 Comp., p. 793; Exec. Order No. 12777, 3 C.F.R., 1991 Comp., p. 351.

20. Pursuant to Section 311(j) of the CWA, EPA promulgated Oil Pollution Prevention regulations, also known as the Spill Prevention, Control, and Countermeasure Regulations ("SPCC Regulations"). The SPCC Regulations are codified at 40 C.F.R. Part 112.

21. The SPCC Regulations set forth procedures, methods, equipment, and other requirements to prevent the discharge of oil and hazardous substances from non-transportation-related onshore facilities into or upon, among other things, the navigable waters of the United States and adjoining shorelines. 40 C.F.R. § 112.1(a)(1).

22. The SPCC Regulations apply to owners and operators of non- transportation-related onshore facilities engaged in drilling, producing, gathering, storing, processing, refining, transferring, distributing, using, or consuming oil or oil products with an aboveground storage capacity greater than 1,320 gallons which could reasonably be expected to discharge oil in quantities that may be harmful into or upon the navigable waters of the United States or adjoining shorelines. 40 C.F.R. §§ 112.1(b) and 112.1(d)(2).

23. The SPCC Regulations contain the following definitions:

a. An "owner or operator" is any person owning or operating an onshore facility. 40 C.F.R. § 112.2.

b. A "facility" is any mobile or fixed, onshore or offshore building, property, parcel, lease, structure, installation, equipment, pipe, or pipeline (other than a vessel or a public vessel) used in oil well drilling operations, oil production, oil refining, oil storage, oil gathering, oil processing, oil transfer, oil distribution, and oil waste treatment. *Id.*

c. "Non-transportation-related" facilities include "Oil storage facilities" and "Industrial, commercial, agricultural or public facilities which use and store oil." *Id.* Appendix A to 40 C.F.R. Part 112 defines "transportation-related" facilities as facilities used for the transport of oil.

d. An "onshore facility" means any facility of any kind located in, on, or under any land within the United States, other than submerged lands. *Id.*

e. "Oil" means oil of any kind or in any form, including petroleum, fuel oil, sludge, synthetic oils, mineral oils, oil refuse, or oil mixed with wastes other than dredged spoil. *Id.*

f. "Storage capacity" means the shell capacity of the container. *Id.*

g. "Discharge" includes, but is not limited to, any spilling, leaking, pumping, pouring, emitting, emptying, or dumping of oil, except in compliance with a permit under Section 402 of the CWA. *Id.*

h. "Navigable waters" means waters of the United States, including the territorial seas. *Id*. In turn, "waters of the United States" has been defined to include, among other things, waters which are currently used, or were used in the past, or may be susceptible to

use in interstate or foreign commerce, including waters which are subject to the ebb and flow of the tide; tributaries to such waters; and wetlands adjacent to the foregoing waters. 40 C.F.R. § 112.2 (2002).

24. Among other things, the SPCC Regulations require that owners and operators of subject facilities:

  a. Prepare and implement a Spill Prevention, Control and Countermeasure Plan ("SPCC Plan") that adheres to certain requirements detailed in the regulations (40 C.F.R. § 112.3, 112.7), reflects good engineering practices (40 C.F.R. § 112.7), is certified by Professional Engineer (40 C.F.R. § 112.3(d)), and is periodically reviewed and amended (40 C.F.R. §112.5);

  b. Prevent discharge of oil from diked drainage areas by use of manual pumps and ejectors (40 C.F.R. § 112.8(b)(1) and (2));

  c. Construct adequate secondary containment for bulk storage tank installations (40 C.F.R. § 112.8(c)(2));

  d. Construct adequate secondary containment for portable containers, including drums with a capacity of 55 gallons or greater (40 C.F.R. § 112.8(c)(11));

  e. Conduct periodic integrity testing and visual inspections of all aboveground containers in accordance with industry standards (40 C.F.R. § 112.8(c)(6)); and

  f. Retain testing and inspection documentation (40 C.F.R. §112.7(e)).

### C. CWA Enforcement Provisions

25. Section 309(b) of the CWA, 33 U.S.C. § 1319(b), authorizes civil actions for "appropriate relief, including a permanent or temporary injunction" in the case of violation of specified provisions of the CWA, including violations of Section 301 of the CWA, 33 U.S.C.

§ 1311, and grants jurisdiction to district courts to restrain such violations and to require compliance.

26. Section 311(b)(7) of the CWA, 33 U.S.C. § 1321(b)(7)(A), together with the Federal Civil Penalties Inflation Adjustment Act of 1990, as amended by the Debt Collection Improvement Act of 1996, 28 U.S.C. § 2461, and 40 C.F.R. Part 19.4, provide for civil penalties of up to $51,796 per day for discharges in violation of Section 311(b)(3) of the CWA, 33 U.S.C. § 1321(b)(3), or an amount up to $2,072 per barrel apply for discharges that occurred after November 2, 2015 when penalties are assessed after January 12, 2022, and up to $6,215 per barrel discharged if is proved that the violations are the result of gross negligence or willful misconduct for discharges that occurred after November 2, 2015 when penalties are assessed after January 12, 2022. *See* 33 U.S.C. § 1321(b)(7)(A) and (D); 40 C.F.R. § 19.4 (establishing, effective January 12, 2022 that the civil penalty amounts were increased to the listed amounts by the Civil Monetary Penalty Inflation Adjustment Rule, Table 1).

27. Section 311(b)(7)(C) of the CWA, 33 U.S.C. § 1321(b)(7)(C), together with the Federal Civil Penalties Inflation Adjustment Act of 1990, as amended by the Debt Collection Improvement Act of 1996, 28 U.S.C. § 2461, and 40 C.F.R. Part 19.4, provide for civil penalties of $51,796 per day of violation of any regulation issued under Section 311(j) of the CWA, 33 U.S.C. § 1321(j) occurring after November 2, 2015 when penalties are assessed after January 12, 2022. See 40 C.F.R. § 19.4 (establishing, effective January 12, 2022 that the civil penalty amounts were increased to the listed amounts by the Civil Monetary Penalty Inflation Adjustment Rule, Table 1).

28. Pursuant to Section 311(s) of the CWA, 33 U.S.C. § 1321(s), and Pub. L. 101-3 § 4304, amounts received by the United States for actions under CWA Section 311 shall be

deposited in the "Oil Spill Liability Trust Fund" established under 26 U.S.C. § 9509 to, inter alia, address future discharges and substantial threats of discharges of oil.

## GENERAL ALLEGATIONS

### A. Oil Discharge Beginning on March 5, 2022

29. Between approximately September and mid-February, 2022, workers at the R & L Facility emptied a one-million gallon diesel oil storage tank ("Tank 27") at the Wilmington Facility for maintenance and cleaning.

30. Beginning on or about mid-February 2022, workers at the R & L Facility began pumping diesel oil back into Tank 27.

31. On or about March 4, 2022, Tank 27 contained approximately 188,000 gallons of diesel oil.

32. On or before March 5, 2022, R & L inadequately sealed a flange on Tank 27.

33. On or before March 5, 2022, diesel oil began to flow out from the inadequately secured flange on Tank 27.

34. Diesel oil flowed from Tank 27 into a bermed secondary containment area.

35. Once in the secondary containment area, the diesel oil flowed into a catch basin, where an automatic pump caused the diesel oil to flow through piping to an adjacent swale, where it entered a subsurface 36" pipe.

36. The oil was conveyed through the 36" pipe to Dutch Creek, where, beginning on or before March 5, 2022, it flowed offsite from the Wilmington Facility.

37. Diesel oil continued to be discharged from the 36" pipe into Dutch Creek until mid-March 2022.

38. The diesel oil from the Dutch Creek Spill contaminated approximately 4 miles of the Dutch Creek, endangering aquatic wildlife, damaging ecosystems, and threatening human safety. EPA, along with state and local response authorities, oversaw clean-up of the spill.

39. Dutch Creek is a perennial tributary to the Little Miami River.

40. The Little Miami River is a traditional navigable waterway.

41. The Little Miami River is designated as a National and State Scenic Waterway.

42. On March 5, 2022, a contractor for R & L notified EPA's response center that "80,000 gallons" of diesel oil had been released from Tank 27 and was impacting Dutch Creek.

43. From March 5 through approximately April 7, 2022, EPA, along with state and local response partners, and R & L, conducted response and clean-up activities along a 4-mile stretch of Dutch Creek where diesel oil mixed with water.

44. The diesel oil was present in quantities that caused a sheen on Dutch Creek.

45. On March 7, after a rain event, EPA employees assigned to the response activities observed a sheen on the Little Miami River, approximately 15 miles downstream from the discharge location.

46. During the response activity, approximately 402,354 gallons of mixed water and diesel oil were collected from Dutch Creek, representing approximately 18,097 gallons of diesel oil. Additionally, approximately 6,877 tons of oil contaminated soil and 20.5 tons of oil-saturated vegetation were removed from the impacted area.

47. EPA subsequently calculated the discharge to be 22,628 gallons based on gauge readings taken from Tank 27.

48. 22,628 gallons of diesel oil is approximately 538 barrels.

### B.     R & L's SPCC Plan

49.     The Wilmington Facility is a non-transportation-related onshore facility that receives, stores, transfers, dispenses, and uses both petroleum-based oils and non-petroleum-based oils to service its truck fleet. R & L stores motor oil, hydraulic oil, lubricants, and various used oils are stored in drums, totes, or other miscellaneous containers at its Wilmington Facility, which has a storage capacity above the SPCC regulatory threshold of more than 1,320 gallons.

50.     R & L is subject to the SPCC Regulations and, as such, is required to prepare and implement a SPCC Plan in accordance with the requirements of 40 C.F.R. Part 112.

51.     R & L prepared an SPCC Plan for the Wilmington Facility dated August 2017 ("2017 SPCC Plan").

52.     The 2017 SPCC Plan states that the Wilmington Facility has an aboveground storage capacity for petroleum-based and non-petroleum-based oils greater than 1,121,000 gallons.

53.     The 2017 SPCC Plan identifies Dutch Creek as the nearest navigable waterway to the Wilmington Facility.

54.     The Wilmington Facility could reasonably be expected to discharge oil in quantities that may be harmful into or upon the navigable waters of the United States or adjoining shorelines.

55.     The 2017 SPCC Plan states that the Wilmington Facility's stormwater drainage flows to secondary containment dikes and that the secondary containment dikes are continuously monitored and serviced to ensure that no leaks or spills of the contents will occur.

56.     The 2017 SPCC Plan further references EPA's SPCC regulations at 40 C.F.R. § 112.8(b)(1), which provide that a facility may empty diked areas by pumps or ejectors; but that

the pumps or ejectors must be manually activated and must be inspected before starting, to ensure no oil will be discharged.

57. The 2017 SPCC Plan states that oil leaked, spilled or otherwise released from Tank No. 27 would flow into an impervious earthen berm that surrounds the storage tank, and that drainage from the earthen berm would flow through a sump and stormwater drainage system to the Wilmington Facility's retention pond.

### C. EPA Inspection & Review of SPCC Plan

58. On March 30 and 31, 2022, EPA conducted an inspection at the Wilmington Facility and a review of R & L's SPCC Plan to evaluate R & L's compliance with EPA's SPCC regulations ("March 2022 Inspection").

59. Prior to and at the time of the Dutch Creek Spill, R & L relied upon an automatic pump for drainage of the secondary containment dike around Tank 27.

60. During the Dutch Creek Spill, the diesel oil that leaked from Tank 27 did not flow from the bermed containment area into a sump and stormwater drainage system to the onsite retention pond, as described in the 2017 SPCC Plan. Rather, diesel oil bypassed the retention pond and flowed to Dutch Creek through a 36" subsurface pipe.

61. During the March 2022 Inspection, EPA inspectors confirmed that the secondary containment was constructed such that bermed containment area was pervious, could not contain the entire capacity of Tank 27, and that any leak, spill or discharge from the tank would not reach the retention pond as stated in the 2017 SPCC Plan because the piping bypassed the retention pond.

62. During the March 2022 inspection, EPA inspectors observed sludge and sheen in the secondary containment area for Tank 23, which is comprised of three 20,000-gallon diesel tanks.

63. During the March 2022 Inspection, EPA inspectors observed that secondary containment for Tank 23 lacked sufficient capacity and was cracked and in disrepair.

64. During the March 2022 Inspection, and during subsequent review of the 2017 SPCC Plan, EPA inspectors found that R & L failed to frequently and regularly inspect its tanks for signs of deterioration, accumulation of oil inside diked areas, or discharges and was unable to produce records of the same.

65. During the March 2022 Inspection, and during subsequent review of the 2017 SPCC Plan, EPA inspectors found that R & L further failed to follow a schedule or procedures, certified by a professional engineer in its 2017 SPCC Plan, for periodic integrity testing and visual inspections of all aboveground bulk storage containers, including tanks and drum storage areas.

## FIRST CLAIM FOR RELIEF

(Penalties for Discharge of Oil in Violation of
Section 311(b)(3) of the CWA, 33 U.S.C. § 1321(b)(3))

66. Paragraphs 1 through 65 are re-alleged and incorporated herein by reference.

67. R & L is a "person" within the meaning of Section 311(a)(7) of the CWA, 33 U.S.C. § 1321(a)(7).

68. R & L is the "owner" and "operator" of the Wilmington Facility within the meaning of Section 311(a)(6) of the CWA, 33 U.S.C. § 1321(a)(6).

69. R & L's Wilmington Facility is an "onshore facility," within the meaning of Section 311(a)(10) of the CWA, 33 U.S.C. § 1321(a)(10).

70. Dutch Creek is a navigable waterway within the meaning of Section 311(b)(3) of the CWA, 33 U.S.C. § 1321(b)(3).

71. During and following the Dutch Creek Spill, diesel oil from Tank 27 was discharged in a harmful quantity from R & L's Wilmington Facility into the navigable waters of the United States in violation of CWA Section 311(b)(3), 33 U.S.C. § 1321(b)(3).

72. The diesel oil discharged in the Dutch Creek Spill is "oil" within the meaning of Section 311(a)(1) of the CWA, 33 U.S.C. § 1321(a)(1).

73. The Dutch Creek Spill that resulted in the release of at least 538 barrels of diesel oil into Dutch Creek was a "discharge" of oil, within the meaning of Section 311(a)(2) of the CWA, 33 U.S.C. § 1321(a)(2).

74. The Dutch Creek Spill was into or upon the navigable waters and adjoining shorelines of the United States, within the meaning of CWA Section 311(b)(7), 33 U.S.C. § 1321(b)(3).

75. The Dutch Creek Spill was of a quantity "as may be harmful," within the meaning of CWA Section 311(b)(3) and (4), 33 U.S.C. § 1321(b)(3) and (4), and 40 C.F.R. § 110.3.

76. The Dutch Creek Spill violated Section 311(b)(3) of the CWA, 33 U.S.C. § 1321(b)(3).

77. R & L was the owner and operator of the Wilmington Facility at the time of the Dutch Creek Spill.

78. R & L is liable for civil penalties for the Dutch Creek Spill described in the foregoing paragraphs up to the amounts as set forth in Paragraph 26.

**SECOND CLAIM FOR RELIEF**

(Injunctive Relief for Discharge of Oil under CWA Section 309(b), 33 U.S.C. § 1319(b))

79. Paragraphs 1 through 65 are re-alleged and incorporated herein by reference.

80. R & L is a "person," within the meaning of Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

81. The diesel oil that spilled during the Dutch Creek Spill is a "pollutant," within the meaning of Sections 301(a) and 502(6) of the CWA, 33 U.S.C. §§ 1311(a), 1362(6).

82. The pipe through which the oil was discharged to Dutch Creek in the Dutch Creek Spill is a "point source" within the meaning of Section 502(14) of the CWA, 33 U.S.C. § 1362(14).

83. The discharge of oil from the Dutch Creek Spill reached waters of the United States and constituted the "discharge of a pollutant," within the meaning of Sections 301(a) and 502(12) of the CWA, 33 U.S.C. §§ 1311(a), 1362(12).

84. R & L was not authorized by any permit to discharge the oil to waters of the United States.

85. The discharge of oil during the Dutch Creek Spill violated Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

86. Because R & L unlawfully discharged a pollutant to waters of the United States in violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a), R & L is liable for injunctive relief pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b).

### THIRD CLAIM FOR RELIEF

(Failure to Comply with the SPCC Regulations in Violation of 40 C.F.R. Part 112)

87. The allegations in Paragraphs 1 through 65 are re-alleged and incorporated herein by reference.

88. Within the meaning of 40 C.F.R. § 112, R & L's Wilmington Facility is a "non-transportation related" "onshore facility" that is engaged in, among other things, storing, transferring, distributing, using or consuming "oil," or oil products and it has an aboveground storage capacity greater than 1,320 gallons, with a shell capacity of at least 55 gallons.

89. A discharge of oil from the Wilmington Facility could reasonably be expected to discharge oil in quantities that may be harmful into or upon the navigable waters of the United States or adjoining shorelines within the meaning of 40 C.F.R. § 112.1(b).

90. R & L is the owner and/or operator of the Wilmington Facility within the meaning of 40 C.F.R. § 112.2.

91. As the owner and operator of the Wilmington Facility, 40 C.F.R. § 112.8(a) requires R & L to meet the general requirements for the SPCC Plan in 40 C.F.R. § 112.7, to implement the SPCC Plan in accordance with its provisions (40 C.F.R. § 112.3), and to comply with specific discharge prevention and containment procedures listed in 40 C.F.R. § 112.8.

92. R & L did not comply with provisions of the SPCC Regulations and/or provisions of the 2017 SPCC Plan, including the following:

    a. R & L failed to construct adequate secondary containment for all of its bulk storage containers in violation of its SPCC Plan and 40 C.F.R. § 112.8.

    b. R & L failed to conduct periodic integrity testing and visual inspections of all bulk storage containers and retain documentation related thereto in violation of its SPCC Plan and 40 C.F.R. § 112.7(e) and 112.8(c)(6).

    c. R & L failed to restrain drainage of oil from the diked area surrounding Tank No. 27 in violation of 40 C.F.R. § 112.8.

    d.  R & L failed to manually activate pumps before emptying diked areas and inspect the diked area and pump prior to emptying diked areas, in violation of 40 C.F.R. § 112.8 (b)(1).

 93. Each failure to comply with the SPCC Plan constitutes a violation of the SPCC Regulations, 40 C.F.R. Part 112.

 94. For each violation referenced in this Claim, R & L is liable for injunctive relief and civil penalties up to the amounts set forth in Paragraph 27 above.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff the United States of America respectfully requests that this Court grant the following relief:

 1. Order R & L to immediately comply with the statutory and regulatory requirements cited in this Complaint;

 2. Assess a civil penalty against R & L up to the maximum amounts provided for under the CWA and for each violation thereof;

 3. Order R & L to take all appropriate action to prevent spills from its facilities into waters of the United States, in compliance with the CWA and the SPCC Regulations; and

 4. Grant such other relief as this Court may deem just and proper.

Dated this 14th day of October, 2022.	Respectfully Submitted,

    TODD KIM
    Assistant Attorney General
    Environment and Natural Resources Division
    United States Department of Justice

/s/Bonnie Cosgrove
BONNIE COSGROVE
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
450 Golden Gate Ave, Ste. 07-6714
San Francisco, CA  94102
Phone: (415) 744-0130
Fax: (415) 744-6476
Email: bonnie.cosgrove@usdoj.gov


KENNETH L. PARKER
United States Attorney
Southern District of Ohio

BRANDI M. STEWART
MATTHEW J. HORWITZ
Assistant United States Attorneys
221 E Fourth Street, Suite 400
Cincinnati, Ohio 45223
Phone: (513) 684-3711
Email: matthew.horowitz@usdoj.gov
Email: brandi.stewart@usdoj.gov

OF COUNSEL:

NICOLE WOOD
Associate Regional Counsel
United States EPA, Region 5
Chicago, IL  60604