**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, et al.<br><br>Plaintiffs,<br><br>vs.<br><br>R&L CARRIERS, INC., et al.<br><br>Defendants. | Civil Action No. 1:22-cv-00601-JPH<br><br>Judge Jeffrey P. Hopkins |

**DEFENDANTS' MOTION TO STAY**

Defendants R&L Carriers, Inc., RLR Investments, LLC, and Greenwood Motor Lines, Inc. d/b/a R+L Carriers (collectively, "R&L") move this Court for an order staying this action brought by the United States of America, purporting to act on behalf of the United States Environmental Protection Agency ("USEPA") and the State of Ohio, purporting to act on behalf of the Ohio Environmental Protection Agency ("Ohio EPA").

The Attorneys General of twenty-four states, including Ohio, filed suit against USEPA and the U.S. Army Corps of Engineers, challenging USEPA's regulations which define "Waters of the United States" ("WOTUS") over which USEPA has jurisdiction under the federal Clean Water Act ("CWA"). *West Virginia v. EPA*, D. N.D. Case No. 3:23-cv-DLH-ARS, ECF Nos. 175-176 (the "State AGs Action"). On February 18, 2025, at the request of USEPA, the Court in the State AGs Action stayed those proceedings to allow USEPA time to revisit its legal positions and assess whether it would revise its stance on the scope of its CWA jurisdiction under the new administration.

Just like these 24 states, R&L challenges USEPA's interpretation of the CWA, specifically its definition of a WOTUS, and disputes USEPA's previous assertion of jurisdiction here. These are the exact issues that USEPA believes should be stayed in the State AGs Action pending its internal review. Therefore, this case also should be stayed. The grounds for this Motion are more fully set forth in the accompanying Memorandum in Support.

Dated: February 21, 2025

Respectfully submitted,

*/s/ Anthony C. White*
Anthony C. White (0062146)
(Lead Trial Counsel)
Stephanie M. Chmiel (0087555)
THOMPSON HINE LLP
41 South High Street, Suite 1700
Columbus, Ohio 43215
Telephone: (614) 469-3200
Facsimile: (614) 469-3361
Tony.White@ThompsonHine.com
Stephanie.Chmiel@ThompsonHine.com

Andrew L. Kolesar (0067927)
THOMPSON HINE LLP
312 Walnut Street, Suite 2000
Cincinnati, Ohio 45202-4024
Telephone: (513) 352-6700
Facsimile: (513) 241-4771
Andrew.Kolesar@ThompsonHine.com

William J. Hubbard (0077033)
THOMPSON HINE LLP
3900 Key Center
127 Public Square
Cleveland, Ohio 44114
Telephone: (216) 566-5500
Facsimile: (216) 566-5800
Bill.Hubbard@ThompsonHine.com

*Attorneys for Defendants*
*R&L Carriers, Inc., R&L Investments, LLC, and*
*Greenwood Motor Lines, Inc. d/b/a R+L Carriers*

**MEMORANDUM IN SUPPORT**

## I. INTRODUCTION

The ground beneath the USEPA's past assertions of jurisdiction in cases like this one is shifting and eroding as we speak, and even USEPA can see it. New leadership appointed at USEPA and the U.S. Army Corps of Engineers — the federal agencies tasked with defining WOTUS and enforcing the CWA — are actively returning these agencies to the legal principles and limited jurisdiction decreed by the United States Supreme Court in *Sackett v. EPA*, 143 S. Ct. 1322, 1332 (2023) ("*Sackett II*"). These deliberations are likely to have a profound impact on this case.

Here, at present, USEPA has asserted numerous claims against, and seeks significant penalties and fines from, R&L for purported violations of the CWA, including for the alleged discharge of diesel fuel to Dutch Creek in Wilmington, Ohio. The CWA regulates "navigable waters," which the statute defines as "the waters of the United States, including the territorial seas." 33 U.S.C. § 1362(7). Thus, one of the major, preliminary issues in this case pertains to whether R&L's accidental discharge of diesel fuel to Dutch Creek was a discharge to the "Waters of the United States" ("WOTUS") as that term is used in the CWA. If not, then USEPA lacks jurisdiction over the spill as to its unlawful discharge claim against R&L and its claims here must be dismissed. This is the exact issue presented in the State AGs Action.

On February 4, 2025, USEPA and the Army Corps of Engineers sought a stay of proceedings in the State AGs Action to allow these agencies to redetermine whether they have any jurisdiction under the CWA in cases like this one. (*See* USEPA Mot. to Stay in State AGs Action, ECF No. 250 (attached as Ex. 1).) That stay was granted February 18, 2025. (Order Granting Stay in State AGs Action, ECF No. 256 (attached as Ex. 2).) USEPA has sought and received similar

stays of litigation around the country for other actions where its WOTUS jurisdiction is being challenged.

USEPA's assertion of WOTUS jurisdiction in this case is identical to its assertion of jurisdiction in the State AG's Action. Thus, USEPA's reasons for requesting a stay in the State AGs Action apply equally to this case, and "would conserve judicial resources and promote the efficient and orderly disposition of this case[.]" (USEPA Mot. to Stay at ¶ 3 in State AGs Action, ECF No. 250.) R&L respectfully asks the Court to issue an Order staying these proceedings pending USEPA's jurisdictional determination and further order of the Court.

## II. BACKGROUND

The definition of WOTUS is a hotly contested issue. *See Sackett v. EPA*, 143 S. Ct. 1322, 1332 (2023) ("*Sackett II*") (defining WOTUS has been a "contentious and difficult task" that "has sparked decades of agency action and litigation"). Under the prior administration, USEPA tried to define the term in so "broad and unqualified" a manner as to encompass, essentially, "all water in the United States." *Id*. at 1342.

Under recent United States Supreme Court decisions, USEPA's broad definition of its jurisdiction has been rejected and narrowed. In *Sackett II*, the Supreme Court found that CWA jurisdiction does not extend beyond relatively permanent bodies of water connected to traditional interstate navigable waters or wetlands with continuous surface connection to navigable waters. *Sackett II*, 143 S. Ct. at 1334–37, 1341. Thus, one of R&L's key defenses in this case is that USEPA cannot impose *any* penalties on R&L under the ruling in *Sackett II*.

USEPA's overreach in its definition of WOTUS, on full display in this case, spurred the State AGs Action. There, twenty-four state Attorneys General (<u>**including Ohio's AG**</u>) sued USEPA, challenging the CWA regulations issued by USEPA and the U.S. Army Corps of Engineers in 2023, including the revised definition of WOTUS issued after *Sackett II*, asserting

that they are overbroad. (*See* State AGs Action, ECF Nos. 175-176.) In recognition of the fact that the change in administration on January 20, 2025 resulted in new leadership at USEPA and the Army Corps of Engineers, USEPA recently sought to stay the State AGs Action, revealing that "incoming leaders are in the process of familiarizing themselves with the issues presented in this case and related litigation" and that a stay was appropriate to ensure "that any oral argument before this Court will reflect the views of current agency leadership." (Mot. to Stay in State AGs Action, ECF No. 250 at ¶¶ 2-3.) That court agreed with the USEPA's reasoning and request, and stayed the State AGs Action on February 18, 2025. (Order Granting Stay in State AGs Action, ECF No. 256.)

Even more, USEPA has sought and received stays of deadlines in multiple other cases pertaining to the WOTUS definition based on this same reasoning. *See infra* at 7. USEPA's rationale for these multiple stays applies foursquare to this case, and therefore R&L seeks the same stay here.

Further evidencing a change in position under the current administration, on February 19, 2025, President Trump issued "Ensuring Lawful Governance and Implementing the President's 'Department of Government Efficiency' Deregulatory Initiative" Executive Order ("Deregulatory EO") (attached as Ex. 3). The Deregulatory EO requires all Agency heads to review all regulations subject to their jurisdiction for consistency with law and Administrative policy and, within sixty days, identify regulations that are unconstitutional or raise serious constitutional difficulties; are based on unlawful delegations of legislative power; are based on "anything other than the best reading of the underlying statutory authority or prohibition;" implicate matters of social, political or economic significance that are not authorized by clear statutory authority; or harm the national interest by significantly and unjustly impeding, among other things, economic development and

land use. (Deregulatory EO, § 2.) The administration and Agency heads must then develop a Unified Regulatory Agenda to rescind or modify the identified regulations. (*Id*.)

Agency heads also are ordered to determine whether ongoing enforcement of any regulations identified in their regulatory review is "compliant with law and Administration policy." (*Id.* § 3.) The Agency heads must, "on a case-by-case basis and as appropriate and consistent with applicable law, then direct the determination of all such enforcement proceedings that do not comply with the Constitution, laws or Administration policy." (*Id*.)

It appears obvious that the USEPA administrators will include the WOTUS rule promulgated by the USEPA during the Biden Administration on the Deregulatory EO list as indicated by the USEPA's request for stays in the lawsuits challenging the WOTUS rule "to ensur[e] any oral argument before [the] Court will reflect the views of current agency leadership." The Court should stay the present case to allow the new Administration's assessment of the WOTUS rule and pending litigation, which will impact the present case, to be completed.

## III. LAW & ARGUMENT

"'The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes in its docket with economy of time and effort for itself, for counsel and for litigants, and the entry of such an order ordinarily rests with the sound discretion of the District Court.'" *FTC v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 626–27 (6th Cir. 2014) (quoting *Ohio Envtl. Council v. U.S. Dist. Court*, 565 F.2d 393, 396 (6th Cir. 1977)); *see also Clinton v. Jones*, 520 U.S. 681, 706 (1997) (courts have broad discretion to stay proceedings). In deciding whether a stay is appropriate, the Court looks to three factors: "(1) potential prejudice to the non-moving party; (2) hardship and inequity to the moving party if the action is not stayed; and (3) the judicial resources that would be saved by avoiding duplicative litigation . . . ." *Kallay v. Tween Brands, Inc*., No. 2:15-cv-2238, 2015 U.S. Dist. LEXIS 190758, at *3 (S.D. Ohio Oct. 29, 2015).

Each of these factors supports a stay in this case, as USEPA itself argued and judicially admitted in the State AGs Action and companion cases.

A stay of deadlines is appropriate here to allow the incoming USEPA leadership to familiarize itself with this case, determine its enforcement priorities, and determine whether USEPA has WOTUS jurisdiction. As USEPA argued in the State AGs Action, "[r]equests to continue proceedings to allow time for new leaders to become familiar with cases under their authority are customary." (State AGs Action, ECF No. 250 at ¶ 2 (citing *Brady Campaign to Prevent Gun Violence v. Salazar*, 612 F. Supp. 2d 1, 10 (D. D.C. 2009)).)[1] Stays have been issued for this reason at USEPA's request in multiple cases where the definition of WOTUS under the CWA is at issue. *See* State AGs Action, ECF No. 256; *Texas et al. v. EPA,* S.D. Texas Case No. 3:23-cv-17, ECF No. 136 (granting indefinite stay); *White v. EPA*, E.D.N.C. Case No. 2:24-cv-13, ECF No. 70 (granting 75-day stay); *Kentucky v. EPA*, E.D. Ky. Case No. 3:23-cv-00007, ECF No. 90 (granting 60-day stay).

Similarly, staying these proceedings is in the best interest of the parties because it would preserve judicial resources and promote efficiency. R&L has already previewed for USEPA and Ohio EPA that it intends to fully litigate the question of whether USEPA has jurisdiction over the diesel fuel discharge, relying on *Sackett II* and *Loper Bright Enterprises v. Raimondo,* 144 S. Ct. 2244 (2024) "*Loper Bright*") (USEPA interpretation is not entitled to deference). To date, R&L's understanding has been that USEPA is relying on its previous, broad interpretation of what qualifies as a WOTUS — an interpretation that is being challenged in cases across the country

[1] *Cf. Organic Trade Ass'n v. U.S. Dep't of Agric.*, D. D.C. Case No. 1:17-cv-01875-RMC, ECF Nos. 123 and 12/15/2020 minute entry (seeking and granting extension of briefing deadlines where there was a "non-negligible possibility that the incoming President will bring policy and legal perspectives that differ from the outgoing President's view").

based on *Sackett II* and *Loper Bright*. However, there is a high likelihood that the incoming administration's policy and litigation position on this issue will change, which is strongly reinforced by the flurry of activity by USEPA to stay litigation in other actions involving the definition of WOTUS. It would be inefficient and prejudicial to R&L to require it to move forward litigating issues that may become moot, or at a minimum modified, under the incoming USEPA leadership.

Furthermore, no party would be prejudiced by the stay. Certainly, USEPA cannot claim any prejudice given its repeated arguments in the State AGs Action and companion cases that stays are necessary. This case is still in its early stages, but is poised to begin in earnest. No discovery has been conducted and no other case deadlines have been set. Thus, this is an ideal time to stay these proceedings because (i) it would potentially eliminate significant expenditures of resources by the parties in discovery and the Court in motion practice, and (ii) it would allow the parties to litigate the case later, if necessary, under the current administration's policies and positions on the key issue in the case: *i.e.*, is Dutch Creek a WOTUS.

Accordingly, R&L respectfully asks the Court to issue a stay so that the incoming USEPA administration can familiarize themselves with the issues presented in this case before the parties commence costly discovery and motion briefing.

## IV. CONCLUSION

For all of the foregoing reasons, Defendants R&L Carriers, Inc., RLR Investments, LLC, and Greenwood Motor Lines, Inc. d/b/a R+L Carriers ask the Court to stay these proceedings indefinitely, with the parties to provide status updates every 60 days.

Dated: February 21, 2025

Respectfully submitted,

*/s/ Anthony C. White*

Anthony C. White (0062146)
(Lead Trial Counsel)
Stephanie M. Chmiel (0087555)
THOMPSON HINE LLP
41 South High Street, Suite 1700
Columbus, Ohio 43215
Telephone: (614) 469-3200
Facsimile: (614) 469-3361
Tony.White@ThompsonHine.com
Stephanie.Chmiel@ThompsonHine.com

Andrew L. Kolesar (0067927)
THOMPSON HINE LLP
312 Walnut Street, Suite 2000
Cincinnati, Ohio 45202-4024
Telephone: (513) 352-6700
Facsimile: (513) 241-4771
Andrew.Kolesar@ThompsonHine.com

William J. Hubbard (0077033)
THOMPSON HINE LLP
3900 Key Center
127 Public Square
Cleveland, Ohio 44114
Telephone: (216) 566-5500
Facsimile: (216) 566-5800
Bill.Hubbard@ThompsonHine.com

*Attorneys for Defendants R & L Carriers, Inc., R&L Investments, LLC, and Greenwood Motor Lines, Inc. d/b/a R+L Carriers*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 21, 2025, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

*/s/ Anthony C. White*
Attorney for Defendants