**IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, et al.<br><br>Plaintiffs,<br><br>vs.<br><br>R&L CARRIERS, INC., et al. | Civil Action No. 1:22-cv-00601<br><br>Judge Jeffery P. Hopkins |

**PLAINTIFF STATE OF OHIO'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' AMENDED MOTION TO EXTEND STAY**

The State of Ohio, on behalf of the Ohio Environmental Protection Agency ("Ohio EPA"), files this Memorandum in Opposition to Defendants' Amended Motion to Extend Stay. Dkt. No. 62. Defendants, R&L Carriers, Inc., RLR Investments, LLC, and Greenwood Motor Lines, Inc ("R&L"), admit that the parties' settlement discussions are at an impasse, and seek a sixth extension of the stay based solely on the possibility that the definition of "Waters of the United States" ("WOTUS") may be further revised. R&L speculates that such future regulatory action might exempt Dutch Creek from that definition. But whether regulatory action impacts Dutch Creek's status in the future should not affect the claim that R&L discharged pollution to Dutch Creek in the past. After nearly a year of repeated stays, this case should proceed now.

## I. INTRODUCTION

In 2022, a diesel storage tank at R&L's Wilmington, Ohio facility failed and discharged more than 20,000 gallons into nearby Dutch Creek. Ohio and the United States both filed complaints as a result of R&L's failures, seeking injunctive relief and civil penalties. The

complaints chiefly allege violations of the Clean Water Act ("CWA") and Ohio Revised Code Chapter 6111, stemming from the Wilmington diesel spill. *See* Compl. of United States, Dkt. No. 1 and Compl. of Intervenor the State of Ohio, Dkt. No. 24. R&L's discharge required Ohio EPA and local municipalities to dispatch emergency services to the area to monitor the spill and protect public safety.

Early in this case, the Parties agreed to a stay to facilitate settlement discussions. However, after a year of repeated extensions of the stay, a failed mediation, and minimal progress toward resolution, Ohio EPA believes that a further extension of the stay is not warranted, and it is time to litigate this case.

R&L pushes for another stay by pointing to *Sackett*, but the reliance on *Sackett* is misplaced. *See Sackett v. EPA*, 598 U.S. 651, 663 (2023). Further, R&L's hope to lump this case in with all the stayed rulemaking litigation fails to recognize the key difference between this enforcement action and those challenges to agency rulemaking. *See, e.g, Texas et al. v. EPA*, S.D. Texas Case No. 3:23-cv-17, Dkt. No. 136 (granting indefinite stay); *White v. EPA*, E.D.N.C. Case No. 2:24-cv-13, Dkt. No. 70 (granting 75-day stay); *Kentucky v. EPA*, E.D. Ky. Case No. 3:23-cv-00007, Dkt. No. 90 (granting 60-day stay); *West Virginia, State of et al v. EPA et al*, Case No. 3:23-cv-00032-DLH-ARS, Dkt. No. 256 (granting 60-day stay).

While R&L's original request for a stay was based on a pending rulemaking, U.S. EPA, along with the Army Corps of Engineers, published a proposed rule defining "Waters of the United States" on November 20, 2025. Updated Definition of "Waters of the United States," 90 Fed. Reg. 52498 (proposed Nov. 20, 2025)(to be codified at 33 C.F.R. pt. 328 and 40 C.F.R. pt. 120). The public comment period for the proposed rule closed on January 5, 2026. The litigation related to the rulemaking thus is not analogous to the pending enforcement case before this Court with

alleged pollution dating back to 2022 and should not be grounds for a continued pause in the proceedings.

The Court should reject R&L's request for continued delay and set a case management schedule so that this matter may proceed.

## II. LAW AND ARGUMENT

R&L's motion does not provide adequate reasons to continue the stay. This Court "has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997). The power to stay a proceeding is "incidental to the power inherent in every court to control the disposition of the causes in its docket with economy of time and effort for itself, for counsel and for litigants." *Landis v. North American Company,* 299 U.S. 248, 254-55 (1936).

In this Circuit there is no precise test for when a stay is appropriate. *See generally Kirby Devs., LLC v. XPO Glob. Forwarding, Inc.,* No. 2:18 cv-500, 2018 WL 6075071 at *2 (S.D. Ohio Nov. 20, 2018); citing *Ferrell v. Wyeth-Ayerst Labs., Inc.,* No. 1:01-cv-447, 2005 U.S. Dist. LEXIS 25358, 2005 WL 2709623, at *1 (S.D. Ohio Oct. 21, 2005). However, district courts often consider "the need for a stay, the balance of potential hardship to the parties and the public, and the promotion of judicial economy." *Id.* But to prevail in a motion for a stay, "the burden is on the party seeking the stay to show there is a pressing need for delay, and that neither the other party nor the public will suffer harm from entry of the order." *Ohio Envtl. Council v. United States Dist. Court, Southern Dist., etc.,* 565 F.2d 393, 396 (1977); *see also Kirby Devs.,* at *8.

R&L has not met this burden. R&L's motion fails to establish that it will experience hardship if a stay is not granted, and the motion does not demonstrate that prolonging this litigation would promote judicial economy.

Further, R&L fails to show there is a pressing need for delay, and that neither the other party nor the public will suffer harm from proceeding with the case. Instead, it relies upon three insufficient arguments: that other courts have issued stays in WOTUS-related cases, that a stay would conserve judicial resources, and that the Parties previously agreed to stays when this matter was in its earlier stages. None of these assertions satisfy R&L's burden.

**a. <u>The cases on which R&L relies do not support further delay of this enforcement action.</u>**

R&L's reliance on other cases involving U.S. EPA and the proposed WOTUS definition is an apples-to-oranges comparison to this case. R&L primarily relies upon *West Virginia v. EPA*, originating as an administrative appeal, which highlights cooperative federalism between the States and the federal government in the Clean Water Act and delves into how the new WOTUS definition could negatively alter that relationship. *See West Virginia v. EPA* (Case No. 3:23-cv-32, D.N.D.). The other cases similarly challenge the definition of WOTUS. *See Texas et al. v. EPA* (Case No. 3:23-cv-17, S.D. Texas) and *Kentucky v. EPA* (Case No. 3:23-cv-7, E.D. Ky.). And *White* involves a commercial seafood business owner who contends that the proposed rule change could affect the intended uses for his properties. *See White v. EPA* (Case No. 2:24-cv-13, E.D.N.C.).

None of these cases seek relief for alleged water pollution that occurred in 2022 presently before this Court. This case instead is a straightforward enforcement action against R&L for discharging diesel fuel into Dutch Creek in violation of the Clean Water Act and Ohio's Water Pollution Control Law. Additionally, R&L omits the fact that the States in the *West Virginia* case have also opposed continued stays because the States seek "clarity on the purely legal issues raised by the Amended Final Rule." *West Virginia v. EPA et al*, (Case No. 3:23-cv-32, D.N.D.) Opp. to Mot. to Stay, Dkt. No. 253 at p. 3.

At least one other district court has adjudicated a Clean Water Act enforcement case even while the definition of WOTUS was in transition. *See United States v. Mashni*, 547 F. Supp. 3d 496 (D.S.C. 2021). There, the court found that the WOTUS definition in effect at the time of the violation controlled, rather than the new definition. *Id.* at 512. If this Court follows the same reasoning, there is no reason for further extensions of the stay.

Because R&L's caselaw is not legally or factually similar, it cannot justify continued delay here.

**b. <u>R&L's claim that the stay preserves judicial resources and promotes efficiency is without merit.</u>**

R&L claims that a continued stay will preserve judicial resources and promote efficiency because it intends to litigate the question of whether Dutch Creek is a WOTUS. This Court could do exactly that if it rejects the motion to stay. The status of Dutch Creek is a factual question that will require litigation if R&L challenges the jurisdiction of the United States. Regardless, the final definition will undoubtedly be the subject of *even more* litigation, which, under R&L's argument, would further delay resolution of the present case. Thus, there is no reason to delay this case until after a final rulemaking.

The proposed WOTUS rule would include in the definition "(1) traditional navigable waters and the territorial seas; (2) most impoundments of 'waters of the United States;' (3) relatively permanent tributaries of traditional navigable waters, the territorial seas, and impoundments; (4) wetlands adjacent (i.e., having a continuous surface connection) to traditional navigable waters, impoundments, and tributaries . . . ." Updated Definition of "Waters of the United States," 90 Fed. Reg. 52498, at Section V (proposed Nov. 20, 2025)(to be codified at 33 C.F.R. pt. 328 and 40 C.F.R. pt. 120). R&L contends that U.S. EPA has interpreted the proposed WOTUS rule too broadly in this case. But even if that were true, which Ohio does not concede, that is a

factual determination that cannot be made until discovery is complete and this case is fully litigated.

R&L relies primarily on the Supreme Court's decisions in *Sackett* and *Loper Bright*. In *Sackett*, the Court held that a WOTUS is a relatively permanent body of water connected to a traditional interstate navigable water, and for wetlands, there is a continuous surface connection to a water that is otherwise a WOTUS. *See Sackett,* 598 U.S. 651, 678-79 (2023). In *Loper Bright*, the Court held the Administrative Procedure Act required courts to exercise their independent judgment in deciding whether an agency acted within its statutory authority, and courts may not defer to interpretations of the law simply because the statute is ambiguous. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024). Ostensibly, R&L's concern is that the new WOTUS definition will clearly eliminate Dutch Creek from federal jurisdiction and moot U.S. EPA's claims. But *Loper Bright* would call for the Court to make a factual determination if R&L raises that argument. That cannot happen while the case remains stayed. Thus, R&L's own case law favors the lifting of a stay here.

**c. <u>The State of Ohio will be prejudiced by any further delay.</u>**

R&L's claim that no party will be prejudiced by an extension is wrong. While Plaintiffs previously consented to stays for other reasons, the case should not remain in the "early" stages any longer. The burden rests squarely on R&L to demonstrate that there is a pressing need for delay. They have made no such showing, especially as it relates to Ohio.

Ohio EPA's claims are ripe for disposition. R&L has not contested that it did not discharge diesel fuel into a Water of the State of Ohio as defined in Rev. Code § 6111.01(H). And the parties have made repeated attempts to resolve the case without litigation. While Ohio remains open to

settlement, those discussions can parallel a litigation schedule. Any further delay in that schedule is not warranted.

Ohio and the United States initially agreed to a stay to facilitate settlement and to brief transitioning federal government decisionmakers on relevant issues in this matter. However, this case has not been resolved after nearly a year of repeated stays. R&L acknowledges this reality, noting "the parties' settlement negotiations are currently at an impasse and discovery is getting ready to commence." Defs.' Amended Mot. to Extend Stay, Dkt. No. 62, p. 9.

R&L's admission underscores that if this stay is continued, Ohio EPA will be in no man's land due to the impasse on settlement negotiations and the decades of litigation related to WOTUS definitions. A continued stay now prejudices the State of Ohio, and it is not judicially efficient for this matter to sit dormant for what could become years, as we wait out a rulemaking process that is unlikely to directly bear on this enforcement action.

Because R&L has failed to demonstrate a pressing need for further delay or to show that Ohio EPA and U.S. EPA will not be prejudiced by an extended stay, its request should be denied.

## III. CONCLUSION

For all these reasons, Ohio respectfully requests that this Court deny R&L's motion to extend the stay in this case for an additional sixty (60) days. R&L has not demonstrated a pressing need for further delay, has not shown that Ohio EPA would be free from prejudice, and has not established that another stay would promote judicial economy. The stay should therefore be lifted, so this enforcement action may proceed.

Respectfully submitted,

**DAVE YOST (0056290)**
Attorney General of Ohio

/s/ Amber Wootton Hertlein
**Amber Wootton Hertlein (0083858)**
**Eythan J. Gregory (0098891)**
**Morgan Trivunic (0100589)**
Assistant Attorneys General
Environmental Enforcement Section
30 East Broad Street, 25th Floor
Columbus, Ohio 43215
Phone: 614-466-8746
Amber.Hertlein@OhioAGO.gov
Eythan.Gregory@OhioAGO.gov
Morgan.Trivunic@OhioAGO.gov

*Counsel for Ohio Environmental Protection Agency*

## CERTIFICATE OF SERVICE

I hereby certify that on April 10, 2026, I electronically filed a copy of the forgoing Plaintiff State of Ohio's Memorandum in Opposition to Defendants' Amended Motion to Extend Stay with the Clerk of Courts using the CM/ECF system. Notice of this filing will be sent to all parties in the case by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Amber Wootton Hertlein
**Amber Wootton Hertlein (0083858)**
Assistant Attorney General