**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, et al.<br><br>Plaintiffs,<br><br>vs.<br><br>R&L CARRIERS, INC., et al.<br><br>Defendants. | Civil Action No. 1:22-cv-00601-JPH<br><br>Judge Jeffery P. Hopkins |

**DEFENDANTS' REPLY TO PLAINTIFF STATE OF OHIO'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S AMENDED MOTION TO EXTEND STAY**

Defendants R&L Carriers, Inc., RLR Investments, LLC, and Greenwood Motor Lines, Inc. d/b/a R+L Carriers (collectively, "R&L") reply to the State of Ohio's ("Plaintiff" or "State") Memorandum in Opposition ("Opposition") (ECF No. 63) to Defendants' Amended Motion to Extend the Stay of these proceedings (ECF No. 62).

The United States does not oppose this Motion. (ECF No. 64). However, without explaining how the status quo has changed, and despite not opposing R&L's reasons for requesting a stay in six separate instances, the State now contends this case should proceed. Since this Court granted R&L's initial Motion to Stay on April 3, 2025 (ECF No. 49), R&L has filed motions for extensions of the stay on May 27, 2025 (ECF No. 50), July 28, 2025 (ECF No. 52), September 23, 2025 (ECF No. 55), November 24, 2025 (ECF No. 57) and January 20, 2026 (ECF No. 59), none of which the State opposed. The State did not offer any argument against the reasons R&L presented for the original stay or R&L's five subsequent motions to stay. Those unopposed reasons are the exact same ones now offered in R&L's current motion to extend the stay: USEPA is

assessing its position and revising the definition of "Waters of the United States" ("WOTUS"), the key issue in the present case.

The State's Opposition, deviating from the position of the United States, misconstrues the reasons for extending the stay of this proceeding and fails to demonstrate that a stay is no longer appropriate. Therefore, R&L respectfully asserts that the Court should grant R&L's motion to extend the stay for an additional sixty days.

**A. USEPA's Rationale for Stays in Other WOTUS Cases Applies Equally in This Case.**

First, the State appears to argue that regulatory activity concerning the key legal issue in this case—whether Dutch Creek is a WOTUS—should not affect the claims in this proceeding. The State contends that the stay should not be extended because the nature of this case is an enforcement action, rather than a challenge to agency rulemaking. Contradicting this assertion, R&L cites multiple other cases relating to the WOTUS definition where USEPA has sought and received stays. *See West Virginia v. EPA*, D. N.D. Case No. 3:23-cv-32-DLH-ARS, ("State AGs Action") ECF No. 256; *Texas et al. v. EPA*, S.D. Tex. Case No. 3:23-cv-17, ECF No. 136; *White v. EPA*, E.D.N.C. Case No. 2:24-cv-13, ECF No. 70; *Kentucky v. EPA*, E.D. Ky. Case No. 3:23-cv-7, ECF No. 90.

Belatedly, the State now appears to argue that because these cases may touch on other legal issues in addition to the WOTUS rule, and because they are not enforcement proceedings in nature, this negates their applicability to this matter. One wonders why the State did not make this argument, if meritorious, in opposition to the first six R&L Motions to Stay. Nonetheless, this argument fails to acknowledge the central legal issue of the WOTUS definition in each case, and USEPA's stated reasons for seeking and continuing to extend stays in those proceedings. USEPA's

reasons for requesting stays in those cases apply equally to this case where USEPA's assertion of WOTUS jurisdiction is the key issue.

Further, at least one of the cases cited in R&L's Motion has a stayed companion enforcement proceeding which is the "apples-to-apples" example the State implies does not exist. The landowner plaintiff in *White v. EPA* is facing enforcement (same as R&L) for alleged violations of the Clean Water Act in *United States of America v. White*, E.D.N.C. Case No. 2:23-cv-00001-D-RN. There, the United States seeks declaratory and injunctive relief, as well as a civil penalty against the defendant for construction and fill activities allegedly impacting wetlands. Notwithstanding the enforcement nature of that case, the United States requested and was granted a stay and continuing extensions of the stay, stating in its most recent Status Report and Motion to Extend Stay that the agencies solicited input to assist the agencies in clarifying the definition of WOTUS and received more than 45,000 recommendations and published the proposed WOTUS rule in the Federal Register on November 20, 2025. As a result of these developments, the United States asked the court to extend the case for an additional 180 days "while the rulemaking process moves forward." *United States of America v. White*, E.D.N.C. Case No. 2:23-cv-00001-D-RN, Status Report and Motion to Extend Stay, ECF No. 106, at p.2. As in *United States of America v. White*, the enforcement nature of this proceeding does not make a stay less appropriate to allow USEPA to complete its rulemaking process, which "could potentially resolve the litigation or narrow the existing dispute." State AGs Action, ECF No. 297, at p.2.

The State's reference to the State Plaintiffs' initial opposition to the stay in *West Virginia v. EPA* also misses the mark. The State failed to mention that the State Plaintiffs (which include Ohio) "welcome the suggestion that the Agencies might be rethinking their approach" to the WOTUS rule. State AGs Action, D.N.D. Case No. 3:23-cv-32-DLH-ARS, Opp. to Mot. Stay, ECF

No. 253 p.2. However, the relevant points are that the State Plaintiffs wanted the court to rule on its challenge to the existing WOTUS rule. USEPA requested a stay to allow it additional time to brief the new Trump Administration regarding issued raised in the case (ECF No. 250) and, as stated in subsequent status reports, to give USEPA time to propose revisions to the WOTUS rule, which "could potentially resolve the litigation or narrow the existing dispute." *See, e.g.*, *Id.*, Federal Defendants' Status Report, ECF. No. 297 at p. 2.

Further, the State's suggestion that resolution of a "purely legal" issue would not be crucial to this proceeding and is not "legally" similar to the State AGs action or the other stayed cases misses the point. USEPA's revision of the WOTUS definition is the basis for stays in the other referenced cases where claims based on this same legal issue would be significantly impacted. *See, e.g., Id.*, p. 1-2 (noting that the agencies are in the process of reviewing the "more than 200,000 comments" received on the proposed WOTUS rule and that the stay remained appropriate where resolving the definition of WOTUS "could potentially resolve the litigation or narrow the existing dispute"); *Texas v. EPA*, S.D.Tex. Case No. 3:23-cv-17, Status Report, ECF No. 152, p. 1-2 (same). Through its public statements[1] and previous stay requests in other cases, even USEPA recognizes that there are legitimate questions about its jurisdiction over cases like the one at bar.

The State's reliance on *United States v. Mashni*, 547 F. Supp. 3d 496 (D.S.C. 2021) is misplaced. The *Mashni* court resolved a significant question of law at the request of the United States and the defendants in that case in order to "control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *United States v. Mashni*, 547 F. Supp. 3d 496, 506 (D.S.C. 2021). These same purposes are not served here where USEPA

[1] *See, e.g.*, 90 Fed. Reg. 52498, 52499 (Nov. 20, 2025) (the proposed WOTUS rule will "clarify the scope of Federal jurisdiction under [the Clean Water Act] in light of the U.S. Supreme Court's May 25, 2023, decision in *Sackett v. Environmental Protection Agency*….").

is both in the process of determining the scope of its jurisdiction under the Clean Water Act and is actively requesting stays in similar cases because this key legal issue will be resolved or narrowed. The *Mashni* court also conducted an extensive analysis of conflicting caselaw on retroactive applicability of law in its determination of the appropriate WOTUS definition to apply in that case. Such an expense of resources by both the Court and the litigants in this proceeding may be unnecessary following USEPA's publication of the final WOTUS Rule.

Moreover, the *Mashni* decision was decided prior to *Sackett v. EPA*, 598 U.S. 651 (2023) ("*Sackett II*"), which casts doubt on the scope of the prior WOTUS rule's application to non-navigable small watercourses such as Dutch Creek. As such, unlike in *Mashni*, even if the Court were to undertake a retroactivity analysis, it would also need to contend with uncertainty as to the validity and scope of the prior version of the WOTUS rule, which USEPA has acknowledged may not be in accordance with *Sackett II*.

**B. A Stay Preserves Judicial Resources and Promotes Efficiency.**

Second, the State's claim that a continued stay would not preserve judicial resources and promote efficiency misses the mark. While R&L does intend to litigate whether Dutch Creek is a WOTUS, further litigation of this point may be unnecessary depending on the outcome of the proposed WOTUS rule. R&L contends that under *Sackett II* and *Loper Bright Enterprises v. Raimondo,* 603 U.S. 369 (2024) ("*Loper Bright*"), USEPA lacks jurisdiction over the diesel fuel discharge. In the preamble to the proposed WOTUS rule, USEPA states that it is reconsidering the WOTUS definition to address stakeholder concerns that the current definition does not "adequately comply" with the Supreme Court's interpretation of federal jurisdiction over waterways in *Sackett II*. 90 Fed. Reg. at 52499. Depending on the outcome of the final rule, further litigation on the key issue in the case may not be necessary. USEPA's assertion of WOTUS jurisdiction in this case is

identical to its assertion of jurisdiction in the State AGs Action. In that case, USEPA requested a stay, which "would conserve judicial resources and promote the efficient and orderly disposition of this case[.]" *West Virginia v. EPA*, D.N.D. Case No. 3:23-cv-32-DLH-ARS, Mot. to Stay, ECF No. 250, p.2.

Moreover, even USEPA posits that a final rule resolving the definition of WOTUS "could potentially resolve the litigation or narrow the existing dispute." *See, e.g.*, State AGs Action, Status Report, ECF No. 297, p. 1-2. Whether such resolution amounts to decisions by this Court as to the application of the new rule, or USEPA's voluntary withdrawal of its claims, continuation of the stay will promote efficiency by removing or narrowing the litigation of the key legal issue behind USEPA's claims against R&L. Development of the factual record will not change the uncertainty of the law that must be applied in this case.

**C. No Party Will Be Prejudiced by Extending the Stay.**

Finally, the State fails to present any clear reason as to how it will be prejudiced by an additional stay of sixty days. The ripeness of the State's claims for disposition does not speak to whether the State will be "unduly prejudiced or tactically disadvantaged," nor any of the other factors the Court considers in granting and extending stays.[2] Indeed, the Plaintiffs have acknowledged this as recently as January by virtue of their agreements not to oppose R&L's prior motions to extend the stay as well as the United States' agreement not to oppose R&L's current motion. The State has failed to point to any changed circumstances since January of this year that now do harm to the State.

[2] As set forth in the Court's Order granting the stay, in deciding whether a stay is appropriate, the Court considers: "(1) the need for a stay; (2) the stage of the litigation; (3) whether the non-moving party will be unduly prejudiced or tactically disadvantaged; (4) whether a stay will simplify the issues; and (5) whether the burden of litigation will be reduced for both the parties and the court." Order at p. 1, ECF No. 49 (citing *Kirby Devs., LLC v. XPO Glob. Forwarding*, Inc., No. 2:18 cv-500, 2018 WL 6075071 at *2 (S.D. Ohio Nov. 20, 2018)).

The State further points to an impasse on settlement negotiations as an apparent change in the basis for extending the stay. However, R&L has never requested the stay based on settlement discussions. In fact, R&L never mentioned settlement discussions as the justification for a stay in its initial Motion to Stay (ECF No. 45)[3] and has consistently reported that settlement discussions were at an impasse in its subsequent motions to extend the stay. *See, e.g.*, ECF No. 50 at p. 7. The State ignores the primary reasons on the record for the initial stay and stay extensions: to allow USEPA time to revisit its legal positions and assess whether it would revise its stance on the scope of its CWA jurisdiction under the new administration.

One of R&L's key defenses in this case is that the non-navigable creek that was affected by R&L's accidental diesel spill is not a WOTUS and, therefore, USEPA cannot impose *any* penalties against R&L for the diesel spill in light of *Sackett II*. If the revision of the WOTUS rule exempts Dutch Creek from being a WOTUS, USEPA's claims for the diesel spill may be rendered moot, which would significantly alter the scope of this proceeding. It would be inefficient and prejudicial to require R&L to move forward by litigating issues that may become moot, or at a minimum modified. Conversely, the State has failed to point to any harm or prejudice it faces in opposing a 60-day extension to the stay other than its own impatience.

**D. Conclusion.**

For all of the foregoing reasons, including the ongoing process to revise the definition of WOTUS, the potential significant impact such deliberations will have on the subject case, and the fact that there have been no changes to the status quo that supported the stay in the first place and

---

[3] The State and United States also did not mention settlement discussions as the basis for not opposing the stay in Plaintiffs' Joint Response to Defendants' Motion to Stay (ECF No. 46), the only document filed by either Plaintiff in response to R&L's motions until the State's opposition memorandum.

the subsequent extensions, R&L respectfully asks the Court to extend the stay for an additional sixty (60) days.

Dated: April 24, 2026

Respectfully submitted,

*/s/ Anthony C. White*
Anthony C. White (0062146)
(Lead Trial Counsel)
Stephanie M. Chmiel (0087555)
THOMPSON HINE LLP
41 South High Street, Suite 1700
Columbus, Ohio 43215
Telephone: (614) 469-3200
Facsimile: (614) 469-3361
Tony.White@ThompsonHine.com
Stephanie.Chmiel@ThompsonHine.com

Andrew L. Kolesar (0067927)
THOMPSON HINE LLP
312 Walnut Street, Suite 2000
Cincinnati, Ohio 45202-4024
Telephone: (513) 352-6700
Facsimile: (513) 241-4771
Andrew.Kolesar@ThompsonHine.com

William J. Hubbard (0077033)
THOMPSON HINE LLP
3900 Key Center
127 Public Square
Cleveland, Ohio 44114
Telephone: (216) 566-5500
Facsimile: (216) 566-5800
Bill.Hubbard@ThompsonHine.com

*Attorneys for Defendants R & L Carriers, Inc., R&L Investments, LLC, and Greenwood Motor Lines, Inc. d/b/a R+L Carriers*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 24, 2026, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

*/s/ Anthony C. White*
Attorney for Defendants

4938-4321-1937